# THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**RHINO ENERGY, LLC,**
**Employer Below, Petitioner**

**FILED**
**September 5, 2023**

EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**vs.) No. 23-ICA-136**      (JCN: 2022011883)

**KENNETH COLE,**
**Claimant Below, Respondent**

## MEMORANDUM DECISION

Petitioner Rhino Energy, LLC ("Rhino") appeals the March 6, 2023, Order of the Workers' Compensation Board of Review ("Board"). Respondent Kenneth Cole filed a timely response.[1] Petitioner did not file a reply brief. The issue on appeal is whether the Board erred in reversing the claim administrator's decision and holding the claim compensable for carpal tunnel syndrome ("CTS").

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the Board's Order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Mr. Cole, a former employee of Rhino, ceased his employment on December 18, 2019, due to continued issues resulting from a work-related heat stroke sustained on February 20, 2018. Mr. Cole sought treatment from Sujata Gutti, M.D., on January 23, 2020, and complained of numbness and tingling in both hands that had been occurring for approximately one to two months. Mr. Cole also reported that his hands would draw up and that the pain extended to his elbows. Upon exam, Dr. Gutti noted "[d]ecreased sensation on the left extensor aspect of the arm, forearm, and dorsum of the hand, second and third finger for light touch, temperature and pinprick sensation." Dr. Gutti's impression was possible C6-C7 radiculopathy, and he recommended NCV and EMG studies on the upper extremities "for the evaluation of radicular symptomology and to differentiate between peripheral nerve entrapment versus nerve root compression."

On March 7, 2020, Mr. Cole underwent an EMG/NCV study of both his arms, which revealed chronic bilateral C5-C6 radiculopathy, bilateral median nerve entrapment distally

---

[1] Petitioner is represented by Jane Ann Pancake, Esq., and Jeffrey B. Brannon, Esq. Respondent is represented by Lori J. Withrow, Esq., and Reginald D. Henry, Esq.

consistent with clinical CTS, and left ulnar neuropathy. Mr. Cole subsequently sought treatment on December 7, 2020, from Keith Hall, M.D. Mr. Cole complained of numbness and tingling in both hands and pain in his right hand and elbow, the latter of which he stated had been affecting him intermittently for years. Dr. Hall diagnosed Mr. Cole with right lateral epicondylitis and gave him a steroid injection. Mr. Cole returned to Dr. Hall in May of 2021, with complaints of worsening right arm pain. Dr. Hall reiterated his diagnosis of right lateral epicondylitis and provided Mr. Cole another steroid injection.

At some point, Mr. Cole completed an Employees and Physicians' Report which he failed to date, but was dated as December 8, 2021, in the physicians' section. Mr. Cole asserted that his hands and arms were injured in the course of and resulting from his employment due to repetitive movement of his hands, wrists, and arms. Benita Amick, APRN, completed the physicians' section and indicated that Mr. Cole sustained an occupational injury of bilateral CTS, and that the injury aggravated a prior injury/disease.

By order dated December 22, 2021, the claim administrator rejected Mr. Cole's claim, finding there was no unequivocal medical proof that his CTS occurred in the course of and resulting from his employment. Mr. Cole protested. Mr. Cole returned to Dr. Hall in February of 2022 with complaints of bilateral elbow pain that radiated into his arms. Dr. Hall diagnosed CTS and right lateral epicondylitis, and gave Mr. Cole a steroid injection. On June 15, 2022, Mr. Cole underwent a second EMG/NVC with Dr. Gutti. The results indicated chronic C6-C7 radiculopathy but no CTS.

Mr. Cole testified via deposition on July 8, 2022. He described his ongoing symptoms, which he believed initially started around 2017. Mr. Cole stated that he last worked for Rhino on December 18, 2019, and that since then his symptoms worsened. According to Mr. Cole, his occupation as an equipment operator required using force, constant vibration, and using multiple controllers with both hands. Mr. Cole further stated that his job duties were repetitive.

On October 5, 2022, Mr. Cole underwent an independent medical evaluation ("IME"), which was performed by Prasadarao Mukkamala, M.D. Mr. Cole reported tingling and numbness in both hands and bilateral elbow pain which he stated began about ten years prior. Mr. Cole denied having to miss work due to his hand and elbow symptoms and stated that the symptoms worsened since he stopped working. Upon examination of Mr. Cole, Dr. Mukkamala diagnosed borderline bilateral CTS and noted evidence of lateral epicondylitis at the right elbow and the possibility of olecranon bursitis at the left elbow. Dr. Mukkamala opined that Mr. Cole's CTS diagnosis was not causally related to his occupation, noting that although Mr. Cole reported a ten-year history of symptoms, there was no documentation of any symptoms or related treatment—an opinion he based on his prior review of Mr. Cole's heat stroke workers' compensation claim. Dr. Mukkamala further noted that Mr. Cole indicated he never missed a day of work for CTS-related symptoms and that he reported his symptoms worsened after he ceased working, which

2

was not suggestive of occupationally-related CTS. Dr. Mukkamala opined that osteoarthritis was the most likely cause of Mr. Cole's CTS symptoms, though he noted that Dr. Gutti previously diagnosed Mr. Cole with peripheral neuropathy, which would also be a causative factor for CTS. Dr. Mukkamala likewise opined that the lateral epicondylitis diagnosis was not causally related to Mr. Cole's occupation, especially considering Mr. Cole's symptoms worsened after he quit working.

Mr. Cole underwent a second IME on December 12, 2022, which was performed by Bruce Guberman, M.D. Mr. Cole reported an onset of tingling and numbness in his hands approximately five or six years prior. Mr. Cole described his occupation as a loader operator and stated that he "pushed buttons and moved the levers thousands of times each day" and that he "had to hold tightly with both hands and press firmly on his elbows because of the jarring." Upon examination, Dr. Guberman diagnosed bilateral carpal tunnel syndrome due to cumulative trauma of work. Dr. Guberman noted that Mr. Cole's job duties meant that he "was continuously vibrated and jarred and had to use his hands and arms, especially the fingers, constantly" and that he "performed very repetitive[] movements of his hands and fingers requiring force and [was subjected to] vibration."

By order dated March 6, 2023, the Board reversed the claim administrator's order and held the claim compensable for CTS. Citing to West Virginia Code § 23-4-1(f) (2021),[2] the Board found that Mr. Cole had sufficiently established a diagnosis of CTS, that his job duties fell in a high-risk category, and that his medical history did not have any nonoccupational factors that could precipitate CTS symptoms. Specifically, the Board

---

[2] West Virginia Code § 23-4-1(f) provides, in part:

[An] occupational disease means a disease incurred in the course of and resulting from employment. . . . [A] disease is considered to have been incurred in the course of or to have resulted from the employment only if it is apparent to the rational mind, upon consideration of all the circumstances: (1) That there is a direct causal connection between the conditions under which work is performed and the occupational disease; (2) that it can be seen to have followed as a natural incident of the work as a result of the exposure occasioned by the nature of the employment; (3) that it can be fairly traced to the employment as the proximate cause; (4) that it does not come from a hazard to which workmen would have been equally exposed outside of the employment; (5) that it is incidental to the character of the business and not independent of the relation of employer and employee; and (6) that it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a natural consequence, though it need not have been foreseen or expected before its contraction.

found that the EMG/NCV testing from March of 2020 indicated mild bilateral CTS and that Drs. Hall, Mukkamala, and Guberman diagnosed bilateral CTS.

Regarding job duties, the Board found that Mr. Cole's thirty-year history as an equipment operator fell into an occupational group for high risk of developing CTS per West Virginia Code of State Rules § 85-20-41.5 (2006).[3] The Board noted that neither Rhino nor Dr. Mukkamala argued that Mr. Cole's job duties did not fall within this high-risk category. Further, Dr. Guberman opined that Mr. Cole's bilateral CTS was caused by his occupational activities based on Mr. Cole's deposition testimony and job description, which documented the repetitive, vibratory nature of his work. While Dr. Mukkamala indicated there were no medical records indicating a ten-year history of symptoms, the Board found Mr. Cole's testimony that he had made complaints about his hands to medical providers, who then failed to include those complaints in his records, to be plausible. Moreover, Dr. Mukkamala based his opinion on a review of medical records in an unrelated claim, which had not been submitted before the Board under the instant claim. Additionally, though Dr. Mukkamala opined that Mr. Cole's reports that his symptoms worsened after he ceased working was not suggestive of occupationally-related CTS, the Board found that, standing alone, this fact does not negate a causal connection between Mr. Cole's high-risk job duties and his CTS diagnosis. The Board took judicial notice of information on Johns Hopkins Medicine's website, which stated that "carpal tunnel syndrome is a progressive condition that can worsen without proper care."

Regarding the medical history, the Board further found that the evidence did not establish that Mr. Cole had any nonoccupational risk factors under West Virginia Code of State Rules § 85-20-41.4 for developing CTS.[4] While Dr. Mukkamala indicated a causal

---

[3] West Virginia Code of State Rules § 85-20-41.5 provides, in part:

Work Setting. Occupational groups at high risk for CTS have included grinders, butchers, grocery store workers, frozen food factory workers, manufacturing workers, dental hygienists, platers and workers with high force, high repetitive manual movement. The literature notes a high prevalence of concurrent medical conditions capable of causing CTS in persons with the syndrome, without regard to any particular occupation. . . . When evaluating CTS in this work setting, a careful search for other contributing factors is essential. Awkward wrist positioning, vibratory tools, significant grip force, and high force of repetitive manual movements have all been shown to contribute to CTS.

[4] West Virginia Code of State Rules § 85-20-41.4 provides:

Confounding Conditions. Medical conditions frequently produce or contribute to CTS. Recognition of these conditions is important for good

4

connection between arthritis and Mr. Cole's symptoms, the Board found that arthritis was not listed as a risk factor, and only rheumatoid arthritis was considered to be a risk factor and Mr. Cole had not been diagnosed with rheumatoid arthritis.

Lastly, the Board noted some discrepancies in the record, including Mr. Cole's varying accounts of how long the symptoms had been present, but concluded that the evidence established that Mr. Cole had a history of heat stroke with resulting significant cognitive issues, which could account for the discrepancy in conflicting statements of when the symptoms began. In sum, the Board concluded that Mr. Cole established by a preponderance of the evidence that he sustained bilateral CTS in the course of and resulting from his employment. Rhino now appeals.

Our standard of review is set forth in West Virginia Code § 23-5-12a(b) (2022), in part, as follows:

> The Intermediate Court of Appeals may affirm the order or decision of the Workers' Compensation Board of Review or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the Workers' Compensation Board of Review, if the substantial rights of the petitioner or petitioners have been prejudiced because the Board of Review's findings are:
> (1) In violation of statutory provisions;
> (2) In excess of the statutory authority or jurisdiction of the Board of Review;
> (3) Made upon unlawful procedures;
> (4) Affected by other error of law;
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

*Duff v. Kanawha Cnty. Comm'n*, 247 W. Va. 550, 555, 882 S.E.2d 916, 921 (Ct. App. 2022).

On appeal, Rhino argues that the Board erred in reversing the claim administrator's order and holding the claim compensable for bilateral CTS. According to Rhino, the Board

---

outcomes. Diabetes mellitus, hypothyroidism, obesity, alcohol abuse, rheumatoid arthritis, postural abnormalities and other conditions can precipitate CTS symptoms. Pregnancy is a well-established risk factor for reversible CTS. Sleep disorders significantly aggravate CTS for some patients. Hobbies and sports activities may contribute to CTS symptoms. A careful look for contributing noncompensable factors may impact causality and response to treatment.

committed several errors warranting reversal, including failing to analyze the claim under the six factors set forth in West Virginia Code § 23-4-1(f), summarily dismissing Dr. Mukkamala's opinion, finding that Mr. Cole did not have nonoccupational risk factors that can precipitate CTS symptoms, and taking judicial notice of information on the Johns Hopkins Medicine website without giving the parties notice.

Upon our review, we find that Rhino failed to demonstrate that the Board's findings and conclusions were clearly wrong. As the Supreme Court of Appeals of West Virginia has set forth, "[t]he 'clearly wrong' and the 'arbitrary and capricious' standards of review are deferential ones which presume an agency's actions are valid as long as the decision is supported by substantial evidence or by a rational basis." Syl. Pt. 2, *Stewart v. W. Va. Bd. of Exam'rs for Registered Pro. Nurses*, 197 W. Va. 386, 475 S.E.2d 478 (1996) (per curiam) (citations omitted). With this high standard of review in mind, we are unable to conclude that the Board erred holding the claim compensable for CTS.

The Board found that the evidence established that Mr. Cole did, in fact, have a diagnosis of bilateral CTS. The March 2020 EMG/NVC study revealed mild bilateral CTS, and Drs. Hall, Guberman, and Mukkamala all agreed on the diagnosis.[5] The Board determined then that the issue was causation and, ultimately, concluded that Mr. Cole's CTS occurred in the course of and as a result of his employment. Rhino states that the Board failed to perform the required analysis of the six factors set forth in West Virginia Code § 23-4-1(f) in determining compensability. However, while the Board did not cite to each factor individually, it did cite to this statute as a whole in its determination of whether Mr. Cole's bilateral CTS diagnosis was incurred in the course of and resulting from his employment. Specifically, the Board indicated that it considered Mr. Cole's testimony regarding his job duties, including that he used his fingers and wrists constantly and repetitively, and was vibrated frequently, over the course of thirty years. The Board found that these job duties were sufficient to place Mr. Cole at high risk for developing occupationally-related CTS per West Virginia Code of State Rules § 85-20-41.5, which Rhino did not contest.

Further, the Board did not err in finding that arthritis was not among the confounding conditions listed in West Virginia Code of State Rules § 85-20-41.4. While the Board did not acknowledge the language in West Virginia Code of State Rules § 85-20-41.3 indicating hand symptoms may be caused by arthritis and nerve entrapment, we note that Mr. Cole was not required to prove that his employment was the sole cause of his diagnosis. "W. Va. Code § 23-4-1 does not require a claimant to prove that the conditions of his employment were the exclusive or sole cause of the disease nor does it require the claimant to show that the disease is peculiar to one industry, work environment, or

---

[5] Rhino attempts to assert that Dr. Mukkamala did not diagnose CTS and, rather, diagnosed osteoarthritis. However, Dr. Mukkamala's report indicates that he diagnosed borderline bilateral CTS.

6

occupation." Syl. Pt. 5, *Casdorph v. West Virginia Off. Ins. Comm'r*, 225 W. Va. 94, 690 S.E.2d 102 (2009) (per curiam) (citation omitted).

To the extent Rhino argues that the Board's taking judicial notice of the information on the John Hopkins Medicine website results in reversible error, we find that Rhino has failed to cite to any authority in support of its assertion, in violation of Rule 10(c)(7) of the West Virginia Rules of Appellate Procedure. Rule 10(c)(7) provides that "[t]he brief must contain an argument clearly exhibiting the points of fact and law presented, the standard of review applicable, and citing the authorities relied on, under headings that correspond with the assignments of error." As such, we find that Rhino is entitled to no relief in this regard.

In sum, the Board found that Mr. Cole established his diagnosis of CTS, established that his job duties placed him at high risk for developing CTS, and established that he did not have any confounding conditions under West Virginia Code of State Rules § 85-20-41.4, and, accordingly, concluded that he had met his burden of proof with regard to compensability. Upon our review, we cannot say that Rhino has met the high standard of review by demonstrating that the Board's decision was clearly erroneous or warrants reversal. The Board adequately analyzed and weighed Mr. Cole's testimony regarding his job duties, his medical history, and the various medical professionals' opinions regarding the causal connection between Mr. Cole's occupation and his bilateral CTS diagnoses in reaching its decision. Therefore, we affirm the Board's March 6, 2023, order reversing the claim administrator's order and holding the claim compensable for bilateral CTS.

Affirmed.

**ISSUED:** September 5, 2023

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Thomas E. Scarr
Judge Charles O. Lorensen

7